# Third District Court of Appeal

## State of Florida

Opinion filed April 12, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D21-1184; 3D21-1185 & 3D21-1186
Lower Tribunal Nos. 18-443-A-K; 18-100-A-K; 18-793-A-K

_____

**Charlie Dennis Altman,**
Appellant,

vs.

**The State of Florida,**
Appellee.

Appeals from the Circuit Court for Monroe County, Mark Wilson, Judge.

Carlos J. Martinez, Public Defender, and Shannon Hemmendinger, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Christina L. Dominguez, Assistant Attorney General, for appellee.

Before FERNANDEZ, C.J., and LOGUE and HENDON, JJ.

LOGUE, J.

Charlie Dennis Altman appeals the trial court's order revoking probation and imposing sentence. We affirm because there is competent

substantial evidence in the record to support the trial court's determination that Altman willfully and substantially violated the conditions of his probation and, therefore, the trial court did not abuse its discretion in revoking Altman's probation. Furthermore, the trial court did not consider uncharged conduct as a basis for revoking Altman's probation, and it did not err in denying Altman's request to be resentenced by a different judge.

## Factual and Procedural History

Altman was charged with aggravated stalking in violation of section 784.048 (case no. 2018-CF-100-AK); grand theft in violation of sections 812.014(1) and 812.014(2)(c) (case no. 2018-CF-443-AK); organized scheme to defraud in violation of section 817.034, and four counts of cashing or depositing item with intent to defraud in violation of section 832.05(3) (case no. 2018-CF-793-AK). On October 10, 2019, Altman entered a plea of nolo contendere pursuant to a negotiated plea agreement. Altman was adjudicated guilty in all three cases and placed on five years' probation, with the probationary periods to run concurrently.

The plea agreement required Altman to leave and remain out of Monroe County from October 12, 2019, at 12:00 p.m. until the successful completion of his probation. During sentencing, the trial court discussed this condition with the prosecutor, defense counsel, and Altman and it was

2

indicated that Altman would be flying out of Monroe County after checking in with the local probation office following his release from jail. Altman stated the flight left the following day. Altman contends it was understood by all that he would be flying to his family home in South Carolina, but this was never expressed during the sentencing hearing, nor was it discussed whether Altman would continue to be supervised by Monroe County, whether his supervision would be transferred to South Carolina, or whether he could reside in South Carolina pending any potential transfer.

On November 15, 2019, an affidavit of violation of probation was filed alleging that Altman violated his probation by leaving his county of residence without the consent of the probation officer. The affidavit alleged that Altman left Palm Beach County his county of residence, without the consent of the probation officer and entered Horry County, South Carolina on November 10, 2019. The violation report stated that Altman contacted his probation officer on November 12, 2019, and advised he had to leave his apartment because his roommate got into a fight. Altman advised the probation officer he was in South Carolina and probation officer told him he could not be out of state without permission. The probation officer instructed him to return to Florida and report to the probation office by November 13, 2019, at 2:30 p.m. Altman reported as instructed.

3

The probation officer noted in the violation report that Altman wanted to move to South Carolina to be with his mother. The probation officer reported that she was in the process of "submitting the transfer request at this time" and recommended no further action. The probation officer noted, however, that if Altman violated supervision again for any reason, she would submit a full violation recommending a warrant be issued. The trial court nevertheless issued a warrant based on this initial violation.

On January 21, 2020, an amended affidavit of violation of probation was filed. The amended affidavit alleged that Altman violated probation a second time by changing his residence without the consent of the probation officer. The affidavit explained that on January 9, 2020, the probation officer learned that Altman moved from his last known place of residence in Palm Beach County on or about December 9, 2019, without the consent of the probation officer and that his whereabouts were unknown. An addendum to the prior violation report explained that on January 8, 2020, Altman's roommate advised officers serving his warrant that Altman went to South Carolina about one month earlier. The addendum noted Altman's whereabouts were unknown and listed his location as "Absconder."

This addendum did not indicate that the probation office was submitting the transfer request but rather stated that "[o]n 11/22/2019, Supervisor

4

Wright spoke with the offender regarding transferring to South Carolina, she instructed him to come in the following Wednesday at 10:00 a.m. to fill out the application to transfer, the offender never showed up." The addendum also stated that the probation officer spoke with Altman on December 16, 2019 and instructed him to report for the month and he did not show up. The probation officer attempted to call Altman, but his phone was disconnected, and she received no answer when she tried to reach Altman's mother. The probation officer recommended Altman's probation be revoked. The trial court issued an amended warrant reflecting this second violation on February 4, 2020 and revoked the prior warrant.

On February 15, 2021, a second amended affidavit of violation of probation was filed adding a third violation. The affidavit alleged Altman violated his probation by leaving his county of residence without the consent of the probation officer because he left Palm Beach County without the consent of the probation officer and entered Broward County as evidenced by his arrest in Broward County on February 8, 2021, pursuant to the February 4th warrant. The probation officer once again recommended Altman's probation be revoked.

A probation violation hearing was held on April 29, 2021, and Altman admitted he violated his probation as alleged in the second amended

affidavit. Altman explained that when he was placed on probation following his plea, he reported to the local probation office as instructed and told the probation officer that he wanted his supervision transferred to South Carolina. The Monroe County probation officer told him that he could transfer supervision within Florida, based on the trial court's order that he leave Monroe County, and then request a transfer to South Carolina. Once in Palm Beach County, Altman requested this transfer. The Palm Beach County probation officer told Altman she would request the transfer but that it would not be done immediately.

Altman then alleged that he stayed with his friend in Palm Beach County until one weekend when some illegal activity occurred. Not wanting to violate his probation and unable to contact the probation office because it was the weekend, Altman alleged he flew to his mother's house in South Carolina. Altman called his probation officer after arriving in South Carolina and advised her of the situation. The probation officer told Altman this was a violation and instructed him to return to Florida and report to her office the following day. Altman complied and said the probation officer told him to stay in a hotel for a night or two while she put in a request to transfer his supervision to South Carolina. Altman stated the probation officer never told him he could not leave Florida again after he completed the paperwork for

6

the transfer, so he returned to South Carolina. Once in South Carolina, Altman contacted the local probation office, but it advised they had not received any transfer paperwork.

Altman remained in South Carolina awaiting the processing of his transfer paperwork. Then, in February of 2020, Altman learned of the February 4th warrant. Altman stated that he reached out to his prior attorney, the probation office in Key West, the prosecutor, and sought new counsel to get the violation resolved. He alleged that the pandemic and resulting shutdowns in March 2020 thwarted his attempts to resolve the violation. He was ultimately arrested in Broward County in February 2021 on the outstanding warrant. Altman alleged he was back in Florida to turn himself in when he was arrested.

Altman apologized to the trial court and explained that he was trying his best to comply with the order to leave Monroe County and keep everyone notified of his whereabouts. Defense counsel argued that Altman committed three low-risk technical violations that did not warrant a revocation and lengthy prison sentence. Counsel noted that Altman did not commit any new crimes while on probation and despite Altman perhaps not taking the appropriate steps to relocate to South Carolina, "at some point he did contact probation and tell them where he was." Counsel asked the court to reinstate

7

his probation so he could return to South Carolina. At a sidebar, defense counsel also advised the court that Altman was a cooperating witness in a separate murder case and argued that Altman's cooperation with the State should weigh in favor of reinstating his probation. The State asked the trial court to revoke Altman's probation and sentence him to the bottom of the guidelines, 62.625 months.

The trial court accepted Altman's admissions and found he willfully and materially violated the terms of his probation, characterizing Altman's actions as absconding over the defense's objection that absconding was a separate violation not listed in the violation affidavit. The trial court further stated it did not consider this a technical violation, revoked Altman's probation, and sentenced him to concurrent 62.625-month terms.

As the hearing was wrapping up, the trial court heard Altman say "[g]ood luck to you, bitch" as he walked away from the camera.[1] The trial court then noted that it had not called the next case and asked why it should not impose consecutive sentences based on what just occurred. Defense counsel argued the sentence imposed was more than sufficient, and both defense counsel and the prosecutor acknowledged they did not hear Altman's comment.

---

[1] Altman appeared in court via live video from the Key West Jail.

The trial court then asked deputies to bring Altman back and ordered that his sentences run consecutively. In doing so, the judge noted that "I haven't called the next case and so we haven't moved on and so I, upon further consideration, think that the sentences in your case should be served consecutively rather than concurrently." Defense counsel objected, arguing that a proper remedy would have been to hold Altman in contempt "rather than . . . what I would consider a vindictive sentence enhancement based on the displeasure of the Court to the defendant's comments." In response, the judge stated that Altman's conduct "suggests . . . that the sentence imposed was inadequate in order to dissuade him from criminal activity in the future." On May 13, 2021, the trial court issued an order revoking Altman's probation.

Defense counsel then filed a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(1). The motion argued Altman should be resentenced by a different judge because the judge's actions in ordering that Altman serve his sentences consecutively instead of concurrently resulted in a vindictive sentence and violated double jeopardy. The motion also argued that the trial court incorrectly considered uncharged conduct, i.e., absconding, in revoking Altman's probation. The trial court never ruled on the motion. A notice of appeal was timely filed.

After the notice of appeal was filed, Altman filed another motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). That motion argued that Altman be resentenced because the prior record section of the sentencing scoresheet relied upon by the trial court at the probation violation hearing was incorrectly calculated. The motion also asked that Altman be resentenced by a different judge because he feared the trial judge would not be fair given the judge tripled the original sentence.

The trial court granted the motion in part and ordered that Altman be sentenced pursuant to a properly calculated scoresheet but denied the request for resentencing by a different judge. At resentencing, the parties agreed that the lowest permissible sentence under a correctly calculated scoresheet was approximately 43.5 months. Defense counsel argued as mitigating evidence that since Altman's last sentencing hearing he testified for the State and helped the State secure a conviction. The defense then argued that resentencing Altman to a lengthy prison term was excessive given the technical nature of the violations and asked the trial court to consider some form of reinstatement or at least run his sentences concurrently "as was contemplated by the way these cases were originally resolved." The State asked the trial court to resentence Altman to sixty months.

Altman then addressed the court and apologized for what happened at his previous hearing. Altman again explained that he believed he was not only permitted to go to South Carolina, but also required to do so based on the trial court's order that he leave Monroe County. After hearing from counsel and Altman, the judge stated, "I don't want to leave anyone with the impression that, you know, I feel as though I'm bound by what I did last time, because I'm not." The judge credited Altman for testifying for the State and helping secure a conviction and resentenced Altman to consecutive 45-month terms in each case. Defense counsel asked the trial court to reconsider the imposition of consecutive sentences, arguing that the trial court carried over the offense it felt from its perceived slight at the prior sentencing hearing. The judge responded, "what happened last time is neither here nor there," "[t]his is a de novo sentencing proceeding," and that he gave the case "a great deal of consideration."

## Analysis

This Court reviews a trial court's revocation of probation for abuse of discretion. Towns v. State, 259 So. 3d 291, 293 (Fla. 3d DCA 2018). We review the trial court's finding of a willful and substantial violation to determine whether it is supported by competent substantial evidence. Id.

11

Altman argues the trial court abused its discretion in revoking his probation because he committed only technical violations, did not commit any new crimes, and made a good faith effort to comply with the conditions of his probation. Altman further contends the trial court erred in considering uncharged conduct as a basis for revoking his probation and in denying his request to be resentenced in front of a different judge.

We find that the record contains competent substantial evidence to support the trial court's finding that Altman willfully and substantially violated his probation by leaving his county of residence and changing his residence without first procuring the consent of his probation officer. Altman admitted violating on three separate occasions. His first violation occurred only a month into his probation when he left for South Carolina. His probation officer advised him this was a violation and instructed him to return. Altman complied and returned the next day. Had this been Altman's only violation, this matter might be like Carter v. State, 659 So. 2d 453 (Fla. 4th DCA 1995), the Fourth District decision on which Altman relies. See id. at 454 (noting the affidavit alleged only a single violation concerning the unauthorized move from Alabama and not a reporting violation upon defendant's return to Florida).

However, Altman admitted he returned to South Carolina three days after his first violation (which, again, occurred only a month into his probationary term) and stayed there for over a year, even after learning that there was a warrant out for his arrest for violating his probation by returning to South Carolina without the consent of his probation officer. Altman alleged at the probation violation hearing that upon returning to Florida after his first violation, his probation officer told him the transfer request was put in and that he "filled out all of the paperwork" for the transfer. He alleged that the probation officer never told him that he could not leave Florida again after he filled out the paperwork for the transfer.

This is, however, where the record becomes at odds with Altman's version of events. The amended affidavit of violation of probation, completed after Altman's second violation for returning to South Carolina, indicates that the probation officer's supervisor spoke with Altman on November 22, 2019, regarding the transfer to South Carolina and instructed him to come in the following Wednesday at 10:00 a.m. to fill out the transfer application, but Altman never showed up. The amended affidavit further provides that the probation officer spoke with Altman on December 16, 2019 and instructed him to report for the month but again, he never showed up. Detectives attempting to serve the arrest warrant on Altman on January 8, 2020, learned

13

from his friend that Altman returned to South Carolina. The probation officer attempted to contact Altman on January 17, 2020, without success as his phone was disconnected and she received no response from Altman's mother. These portions of the record contradict Altman's claim that he filled out the transfer paperwork and believed he was free to return to South Carolina.

Furthermore, Altman knew of the outstanding arrest warrant for a year and never attempted to turn himself in. While he alleged at the violation hearing that he was on his way to turn himself in when he was arrested, he was picked up in Broward County, not in Key West. Altman also faults the pandemic, but COVID-19 related lockdowns did not begin until March 2020, while Altman left for South Carolina a second time around late November or early December of 2019 and learned of the outstanding arrest warrant in February 2020, all before the pandemic became an issue. Moreover, as the trial court noted at the violation hearing, the courts were not shut down during this time.

Based on the foregoing, there is competent substantial evidence in the record supporting the trial court's finding of a willful and substantial violation of the Order of Probation.

As to Altman's contention that the trial court considered uncharged conduct as a basis for revoking his probation, this argument is without merit. The record reflects the trial court considered only the conduct charged in the second amended affidavit of violation of probation. Specifically, that Altman left his county of residence twice and changed his residence to South Carolina all without first procuring the consent of his probation officer. While the trial court early in the violation hearing characterized Altman's conduct as absconding, the fact remains that the only actual conduct relied on by the trial court in finding a willful and substantial violation was that specifically provided in the second amended affidavit.

Altman's reliance on the First District's decision in <u>Perkins v. State</u>, 842 So. 2d 275 (Fla. 1st DCA 2003), is misplaced because the First District did not reverse in that instance based on the trial court's characterization of the defendant's actions as absconding, despite that language not being used in the violation affidavit. Rather, the court reversed because the trial court revoked probation based on a different time period than that contained in the violation affidavit. <u>Id.</u> at 277-78. Here, in contrast, the trial court relied on the specific conduct alleged in the second amended affidavit.

Finally, Altman contends the trial court erred in denying his request to be resentenced in front of a different judge. Altman argues that the trial

15

court's decision to resentence him to consecutive terms indicated the trial judge was predisposed to run Altman's sentences consecutively and was biased against him based on Altman's comment during his first violation hearing. However, Altman's arguments disregard the fact that the trial court considered Altman's mitigation evidence in reducing his sentence to 45-month terms. While the trial court still ordered these terms to run consecutively rather than concurrently, the trial court stated throughout the hearing that it was not under "the impression that, you know, I feel as though I'm bound by what I did last time, because I'm not"; "what happened last time is neither here nor there[;]" "[t]his is a de novo sentencing proceeding[;]" and that he had given the case "a great deal of consideration." The trial court was within its discretion to resentence Altman to consecutive terms, and the trial court's comments during resentencing indicate it gave due consideration to this issue and did not feel compelled or bound to impose the same sentence based on what occurred during the first violation hearing.

Accordingly, we affirm the trial court's revocation of probation and imposition of sentence in all respects.